IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

ANTHONY DOYLE WILLIAMS      PLAINTIFF

V.      CIVIL ACTION NO. 1:23-CV-97-DAS

COMMISSIONER OF SOCIAL SECURITY      DEFENDANT

MEMORANDUM OPINION AND JUDGMENT

This cause is before the court on the plaintiff's complaint for judicial review of an unfavorable final decision of the Commissioner of the Social Security Administration regarding his application for supplemental security income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. Docket 9. The court, having reviewed the administrative record, the briefs of the parties, and the applicable law and having heard oral argument, finds the decision of the Commissioner of Social Security should be remanded.

FACTS

The plaintiff, Anthony Doyle Williams, filed his application for benefits on November 19, 2020, alleging onset of disability commencing in February 19, 2017. The Social Security Administration denied the claim initially and on reconsideration. Following a hearing, the ALJ issued an unfavorable decision on February 15, 2023. The Appeals Council reviewed the ALJ's decision and issued a decision finding the plaintiff was not disabled on June 9, 2023. T
his timely appeal followed.

The ALJ determined the plaintiff had the following severe impairments: disorders of the spine, abnormality of major joints, obesity, COPD (chronic obstructive pulmonary disease),

asthma, depression, and anxiety. The ALJ found he retained the residual functional capacity (RFC) to perform light work, with the following additional limitations:

- Occasionally balance, stoop, kneel, crouch, crawl, climb stairs and ramps but never climb ladders, ropes or scaffolds;
- Frequently reach on the right and occasionally reach overhead on the right;
- Option to alternate sitting and standing at will;
- Avoid concentrated exposure to extreme heat, cold, humidity, and wetness;
- Avoid even moderate exposure to dust, odors, gases, fumes, poorly ventilated areas and other pulmonary irritants, unprotected heights, and hazardous moving machinery;
- Perform routine and repetitive tasks, and understand, remember, and carry out short simple instructions;
- Sustain concentration, persistence, and pace for two-hour blocks of time, and make simple work-related decisions;
- Occasionally interact with coworkers and supervisors but never interact with the general public; and
- Adapt to occasional and gradually introduced changes in workplace but no work at specific piece or production rate pace.

While the plaintiff is unable to perform any of his past relevant work, the ALJ found, based on the testimony of the Vocational Expert (VE), that there were jobs in the national economy that would fit within his RFC. For example, the ALJ found he can work as a routing clerk, a small products assembler I, and a carwash attendant.

## ANALYSIS

The plaintiff raised three issues on appeal, but the court will address only the second and third issues which are dispositive.[1] The plaintiff argues that substantial evidence does not support

---

[1] The first issue raised involves the ALJ's failure to sufficiently explain the supportability and consistency factors required under 20 C.F.R. § 404.1520c(b)(2) with respect to Dr. Jane Eason's and Jana Cline's medical opinions. The court agrees the ALJ erred in this respect; however, the error does not warrant remand because the plaintiff failed to show the attendant harm. In a recent unpublished opinion, the Fifth Circuit specified that to show prejudice from an ALJ's failure to comply with 20 C.F.R. § 404.1520c, the plaintiff must "show that if the ALJ had given further explanation [of the medical opinions at issue], then she would have adopted them." *Miller v. Kijakazi*, 2023 WL 234773, at *4 (5th Cir. Jan. 18, 2023). In other words, the plaintiff did not show that had the ALJ properly assessed the supportability and consistency of Dr. Eason's and Ms. Cline's opinions, the ALJ would have adopted the

the ALJ's decision at Step 5 because the jobs identified by the VE are inconsistent with the RFC. As outlined above, the RFC includes an "option to alternate sitting and standing at will." The VE testified that an individual with the plaintiff's age, education, and RFC could perform the jobs of routing clerk, small products assembler I, and carwash attendant – all jobs at the light exertional level. Considering the sit/stand limitation, the plaintiff contends the VE's testimony conflicts with the regulatory definition of light work, and therefore, under SSR 00-4p, the ALJ erred in relying on his testimony. Because the plaintiff would be found disabled if limited to sedentary work under the medical-vocational guidelines, he maintains this error is not harmless and warrants remand.

Social Security Ruling 00-04p acknowledges the reliance of the Social Security Administration on "VEs … to resolve complex vocational issues."[2] SSR 00-4P (S.S.A.), 2000 WL 1898704 at *2. However, an ALJ is prohibited from "rely[ing] on evidence provided by a VE […] if that evidence is based on underlying assumptions or definitions that are inconsistent with our regulatory policies or definitions." By way of example, the regulation offers the following illustration:

> Although there may be a reason for classifying the exertional demands of an occupation (as generally performed) differently than the DOT (e.g., based on other reliable occupational information), the regulatory definitions of exertional levels are controlling. For example, if all available evidence (including VE testimony) establishes that the exertional demands of an occupation meet the regulatory definition of "medium" work (20 CFR 404.1567 and 416.967), the adjudicator may not rely on VE testimony that the occupation is "light" work.

---

opinion, which could conceivably lead to a different outcome in this case. The court notes this here because alleged violations of 20 C.F.R. § 404.1520c(b)(2) have become an increasingly common issue raised at the district court level, and the *Miller* decision is particularly instructive with respect to this commonly alleged error.

[2] Though an interpretative ruling like SSR 00–4p is only binding on the SSA, the Fifth Circuit has frequently relied upon SSA rulings in evaluating ALJs' decisions. *See Myers v. Apfel,* 238 F.3d 617, 620 (5th Cir. 2001). Moreover, an ALJ's violation of a ruling, in general, has been deemed reversible error, provided the error results in prejudice. *Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir. 1981).

*Id*. at *3. SSR 00-4p further requires an ALJ to obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs and information provided in the DOT, and to explain in the written decision how any identified conflict has been resolved. *Id*. at *4; *see also*, *Stark v. Comm'r of Soc. Sec.*, 2015 WL 2251821, at *3 (N.D. Miss. May 13, 2015). While "SSR 00-4p allows for some conflict between information provided by the VE and the DOT, it explicitly prohibits an ALJ from relying on VE testimony that conflicts with the exertional levels listed in the DOT." *Stark*, 2015 WL 2251821, at *4. In fact, the DOT classifications of exertional levels are "controlling" when such a conflict arises. SSR 00-4P, 2000 WL 1898704 at *3.

During the administrative hearing, counsel for the plaintiff inquired as to whether a certain amount of standing or walking is required for light work. The VE responded that the jobs identified "lend themselves fully to the sit/stand option" allowing a person to "sit and/or stand in these jobs and do the work." He continued, "they don't need to stand. […] So it's not a requirement to stand. If a person opts to sit in a sit/stand capacity, I mean, that's just an arbitrary decision, up to – it's up to the individual." The only explanation the VE offered during the hearing for the inconsistency between his testimony and the information in the DOT was his "training and experience in the world of work." In his decision, the ALJ acknowledged the VE's testimony was inconsistent with the DOT with respect to the limitation on overhead reaching and the sit/stand option but concluded there was "a reasonable explanation for the discrepancy." The ALJ explained,

> [t]he vocational expert testified his opinions regarding overhead reaching and sit/stand option are based on his training and experience. Attorney Reynolds objected to the light jobs provided by the vocational expert on the grounds that light work requires an individual to be able to stand and walk for 6 hours per day and the residual functional capacity requires the claimant be able to sit or stand at will. While DOT guidelines state light work requires ability to stand and walk 6 hours per day, the vocational expert pointed out that some light jobs can be performed sitting or standing, and an employer is unconcerned about a worker's posture as

long as the work gets done. The vocational expert's expertise is the reason we utilize vocational expert testimony at hearings. Therefore, the undersigned overrules Attorney Reynold's objection to the vocational expert's testimony.

This court dealt with similar circumstances in *Spears v. Commissioner of Social Security*. *Spears v. Comm'r of Soc. Sec.*, 2020 WL 1286212 (N.D. Miss. Mar. 18, 2020). In *Spears*, the ALJ limited the plaintiff to medium work but, among other limitations, found the plaintiff required the use of a cane to assist with walking. Relying on VE testimony, the ALJ determined that, even with the use of a cane, the plaintiff could perform two jobs at the light exertional level. The court found that in explaining that his testimony was consistent with the DOT, the VE essentially "testified that these jobs while classified as light, could be performed as sedentary." *Id*. at *2. Because the VE's testimony described jobs that fit the sedentary classification, the court remanded the case.

The court is persuaded that the same error has occurred here. While the VE identified jobs at the light exertional level, his testimony wholly eliminated the need to stand in those jobs, thus bringing his testimony in direct contradiction with the regulatory definition of light work:

> [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range or light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). Social Security Ruling 83-10 similarly provides:

> A job is ... in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.

*Titles II & Xvi: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-10, 1983 WL 31251 (Jan 1, 1983). In defending the ALJ's decision, the Commissioner ignores the VE's testimony that the light jobs identified do not require *any*

standing – a representation that is in direct conflict with the DOT, which requires, at a minimum, far more than the explanation offered. Moreover, as the plaintiff points out, the ALJ's explanation regarding an employer's preference is pure, unsupported speculation. Ultimately, this court has no way of determining whether the ALJ's step 5 findings are supported by substantial evidence. Because the plaintiff would be found disabled if limited to sedentary work under the medical vocational guidelines, he has satisfied the requirement for establishing prejudice.

      The third issue the plaintiff raised involves whether the Appeals Counsel (AC) should have considered medical evidence submitted after the ALJ's decision was issued on February 15, 2023. These additional records are dated February 20, 2023, and document inpatient psychological treatment for suicidal ideation. The plaintiff was discharged on February 28, 2023, with the diagnoses of major depressive disorder recurrent severe, unspecified anxiety disorder, and chronic pain disorder, and was referred to an intensive outpatient program. In records dated March 1-6, 2023, the plaintiff was admitted to a psychiatric intensive outpatient program during which he consistently presented as depressed, irritable, apathetic, and anxious or worried. The AC determined the additional evidence did not relate to the period at issue and did not consider these records.

      The AC will consider additional evidence if it is new, material, relates to the time on or before the ALJ's decision and creates a reasonable probability that it would change the outcome of the decision. 20 C.F.R. § 416.1470(a)(5) (2020). The plaintiff argues that these records "clearly relate to the period at issue" and, citing *Artis v. Commissioner*, constitute evidence which is "new, material, and has a reasonable probability of changing the outcome of the ALJ's decision." *Artis*, 2022 WL 704205, (N.D. Miss. 2022) ("The more restrictive the RFC in the

ALJ's decision, logically, the less compelling additional evidence would need to be to create a reasonable probability of a different result.").

The court finds the AC erred in finding that these records did not relate back to the time on or before the ALJ's decision. Because the evidence creates a reasonable probability that it would change the outcome of the decision, the AC should have considered it. The plaintiff contends the medical evidence "would have likely changed the ALJ's decision about the consistency of Ms. [Jana] Cline's medical opinion," and the court agrees. The ALJ concluded Ms. Cline's medical source statement was "unreliable and therefore unpersuasive" because her records did not document her observations but only the plaintiff's subjective complaints. The May 1-6, 2023 records from North MS Behavioral Health appear to support Ms. Cline's opinions regarding the plaintiff's mental limitations – specifically his ability to concentrate and complete tasks in a timely manner. At the administrative hearing, the VE testified there would be no available jobs if the plaintiff were off task 10 percent of the workday. Finding the records from February 20 and May 1-6, 2023, could alter the outcome, the ALJ is instructed to evaluate them on remand.

Accordingly, the Commissioner's decision is reversed and remanded for a rehearing of the plaintiff's application under the fourth sentence of § 405(g).

**SO ORDERED**, this the 6th day of May, 2024.

/s/ David A. Sanders
**U.S. MAGISTRATE JUDGE**